ERNEST NORWOOD, Appellant, v. EVERETT J. NORWOOD.—No. 39025.—
183 S. W. (2d) 118.

Division One, November 6, 1944.

*Lewis H. Cook, J. R. Baker* and *Ira H. Lohman* for appellant.

550

*H. P. Lauf* and *June R. Rose* for respondent.

BRADLEY, C.—Sec. 538, R. S. 1939, Mo. R. S. A., Sec. 538, amended, Laws 1943, p. 303, provides, among other things, that when a paper writing purporting to be a will has been denied probate, any person interested may, within one year, proceed in the circuit court of the county to establish such purported will, and that the issue shall be "whether the writing produced be the will" of the alleged

testator. The present cause is an action to establish a paper writing, denied probate, as the last will and testament of Anna K. Norwood, deceased. Verdict and judgment were that the said paper writing was not the last will and testament of the said Anna K. Norwood. Motion for a new trial was overruled and plaintiff appealed. The appeal lies to the supreme court because title to real estate is involved.

Error is assigned (1) on the refusal of plaintiff's (appellant's) demurrer to the defendant's evidence at the close of the case; (2) on defendant's (respondent's) instruction No. 1; and (3) on the rejection of certain evidence offered by plaintiff.

Plaintiff and defendant are sons and the only heirs of Anna K. Norwood, the alleged testatrix, who died August 21, 1941. The property involved is in Jefferson City. The will sought to be established as the last will of Mrs. Norwood was executed July 17, 1935, and there is no claim that this will, which is set out in the petition, was not properly executed. The claim, as appears infra, is that this will was revoked by a subsequent will. The 1935 will was denied probate by the probate court of Cole County, September 13, 1941. The petition alleges the execution of the will, the death of Mrs. Norwood, pleads the offering for probate, the denial of admission to probate, and asked that an issue be made and submitted to a jury as to whether the said paper writing was the last will and testament of Mrs. Norwood.

The answer made certain admissions about which there is no dispute, including the admission that the purported will was presented for probate and that such was denied. Undue influence upon his mother by plaintiff was pleaded, but that question was withdrawn from the jury. The answer alleged that in August, 1939, Mrs. Norwood made and executed her last will and testament (hereinafter referred to as the 1939 will) by the terms of which she revoked all prior wills; that the August, 1939, will, on September 13, 1941, was admitted to probate by the probate court of Cole County, and adjudged by the probate court to be the last will and testament of Mrs. Norwood, and defendant asked that the 1935 will be declared "not to be the last will and testament" of Anna K. Norwood.

Plaintiff replied by general denial and alleged that "all the matters and things" alleged by defendant as to the 1939 will "are res adjudicata", and that defendant was "barred from setting up as a defense" to the present cause "any matters and things with respect to the will alleged to have been made" by Mrs. Norwood in August, 1939, because, plaintiff alleged, in cause No. 9515, filed by plaintiff (October 16, 1941, same day present cause was filed) against defendant and others the sole issue was whether or not Mrs. Norwood, in August, 1939, "duly made and executed a will as is shown by the petition and answer and other pleadings in that cause"; that upon the trial of that issue "a jury returned into this court a verdict on

552

December 17, 1942, . . . that the will alleged to have been made" by Mrs. Norwood in August, 1939, was not her last will and testament; that no appeal was taken and that the matter became final.

Plaintiff filed motion to strike that part of defendant's answer pleading the execution of the 1939 will. The motion proceeded on the theory that all such was res adjudicata by reason of the former suit. In support of the motion, plaintiff sought to introduce "the pleadings, the record, the motion for a new trial in case No. 9515 wherein Ernest Norwood was plaintiff and Everett Norwood and others were defendants." Objection ·to the offering was on the grounds "that the pleadings as offered upon their face show that it was an entirely different and distinct and separate case—an entirely different, separate and distinct cause of action from the suit now pending before this court, number 9516, and for the further reason the pleadings as offered on their face show different parties, and for the further reason that no final and complete judgment was ever rendered by the circuit court of Cole County, Missouri, in said cause." It seems that no formal judgment was entered on the verdict of the jury in cause No. 9515. The motion to strike was sustained in part, but the court said: "If you (defendant) can convince the jury there was a subsequent will executed which revoked this one, you would be entitled to show that."

Plaintiff offered in evidence the pleadings and the verdict in cause No. 9515, but these were excluded on the same grounds invoked when offered in support of the motion to strike. These offerings appear, however, in the record as excluded offerings.

Plaintiff does not assign error on the admission of evidence. His demurrer to defendant's evidence goes to the propositions that the evidence was not sufficient to make a submissible issue on the execution of the 1939 will, and we may say, to the defense of res adjudicata.

The present plaintiff (appellant) Ernest Norwood, was the sole plaintiff in cause No. 9515, tried in the circuit court December 17, 1942. The present cause (9516) was tried November 26, 1943. Defendants, in cause No. 9515, were Everett Norwood (present defendant); Alpha Goff, daughter of plaintiff; Ted and Johnnie Norwood, and Madeline Norwood Porter, sons and daughter of defendant Everett Norwood; Bernice Norwood, former wife of Everett; and Edwin Bode, administrator c. t. a. of the estate of Anna K. Norwood.

The 1935 will, that is, the present will, gave to Ernest Norwood, plaintiff here, the house and lot at 816 Fairmount Street, the coal yard equipment (Mrs. Norwood operated a coal yard in Jefferson City), together ▆▆▆ with the good will of the business. The 1935 will gave to Everett Norwood, defendant here, the house and lot at 922 West McCarty Street. The residue was given equally to Ernest and Everett. The 1935 will was witnessed by Phil M. Dampf, deceased at time of trial, and Mrs. Nora O'Neal.

The 1939 will was lost, but from what purports to be a substantial copy it appears that the Fairmount Street property was given to Ernest for life only, remainder to his daughter, Alpha, and Ted, Everett's son, and the West McCarty Street property was given to Everett for life only, remainder to Johnnie, Ted and Madeline Norwood Porter, and Anna Marie Norwood, sons and daughters of Everett. This will also gave to Alpha an automobile, and to Bernice Norwood, the former wife of Everett, the coal business, except accounts, but she was to divide the net profits between Ernest and Everett. The residue was given equally to Ernest and Everett. The purported copy of the 1939 will shows witnessed by Ira H. Lohman and Nora O'Neal.

We rule, infra, that plaintiff's plea of res adjudicata was well taken, but in order to better appreciate that plea, it is necessary, we think, to deal at some length with the evidence as to the 1939 will. Plaintiff, proponent of the 1935 will, used a bank employee to identify the signature of Phil M. Dampf, witness to that will, then called Mrs. O'Neal, also a witness, introduced the will, and rested. Both wills were drafted by Ira H. Lohman, an attorney, Jefferson City. Mrs. O'Neal, a witness to both wills, was a stenographer in Mr. Lohman's office for a number of years and was such at the time both wills were executed. She testified that Anna K. Norwood and Ernest had been clients of Mr. Lohman for a number of years; that Ernest gave to Mr. Lohman the information upon which the 1935 will was written; and that Mrs. Norwood came later to the office and signed the will. As to the 1939 will, Mrs. O'Neal testified:

"Mrs. Norwood went to the hospital August 20, 1939, and the 1939 will was written a day or two before that. I typed the 1939 will; it was dictated to me by Mr. Lohman in his office. It was signed by Mrs. Norwood and was signed by two or more witnesses, and I was one of the witnesses, but I don't remember who the other witness or witnesses were. The 1939 will was turned over to Mrs. Norwood; it contained a revocation clause revoking all other wills. Mrs. Norwood said what was to be put in it. It was the custom in Mr. Lohman's office to keep copies of wills drafted, and I kept a copy of the 1939 will. I have searched in the office, but have been unable to find a copy of that will."

Mrs. O'Neal gave the terms of the 1939 will about as appears, supra, from the purported copy, and further testified: "On the day Mrs. Norwood executed the 1939 will, she transferred some building and loan stock to Bernice Norwood to be held in trust for Johnnie and Ted Norwood, so their schooling could be finished. Mrs. Norwood also put provisions in the (1939) will about the coal yard. I lived next door to Mrs. Norwood and knew her a long time and frequently talked to her. I discussed with her on various occasions the terms of the 1939 will, and the terms she discussed with me were incorporated in the 1939 will."

Nina Summerville testified: "I reside at Norman, Oklahoma; lived in Jefferson City for 30 years prior to 1933; knew Mrs. Norwood since 1910; was in Jefferson City most of the year 1939. I was with Mrs. Norwood in her home all day on the day before she went to the hospital in August, 1939. Mrs. Norwood went to town in the afternoon of that day; when she returned I witnessed her will. I don't know whether Mrs. Norwood or Mrs. O'Neal brought the will (Mrs. O'Neal lived next door; houses were 10 feet apart); I think Mrs. O'Neal brought it. I witnessed the will on Mrs. O'Neal's front porch; Mrs. O'Neal was present; Mrs. Norwood asked me to sign it; she was in her window. Mrs. Norwood's name and Mrs. O'Neal's name were on the will when I signed. I signed in the presence of Mrs. Norwood and Mrs. O'Neal.''

On being recalled Mrs. O'Neal said that she had no recollection of taking the 1939 will out to her house; that she was sure that did not occur.

Alpha Goff, plaintiff's daughter, testified that she talked with her grandmother just before she (the grandmother) went to the hospital in August, 1939, and that her grandmother referred to the 1935 will as "Ernest's will"; said that "there was a will in her box"; said that "the property at 816 (Fairmount) was to be Dad's (Ernest's) as long as he lived and then it was to be divided between Teddie and I."

Ted Norwood testified that he talked with his grandmother two weeks before she died. "Q. What did she tell you were the provisions of the will? A. She told me the house at 816 Fairmount was to go to Ernest while he lived and when he died it would belong to Alpha and I, and the house on McCarty would go to my father and when he died it would go to me and my brother and sisters and that the coal yard would be given to my mother, and that the car would be given to Alpha. . . . Q. Did she tell you where this will would be found? A. She said, 'in the box.' Q. Did she keep anything at the coal yard that she referred to as a 'box'? A. Yes, there was a special compartment in the safe that was often referred to as 'the box.' Q. After your grandmother died, did you make a search to find the will? A. I certainly did. Q. Where did you look? A. In the box, but there was nothing there. Q. Where? A. In the safe at the coal yard. Q. What did you find in the box? A. I found a lot of sales papers and so forth. Q. Did she keep many of her papers in this place? A. Yes. . . . Q. During that period of time who was in charge of the coal yard? A. My uncle (Ernest) had a key and my brother also."

It appears from the evidence of Mr. Lohman that Mrs. Norwood had, at some time prior to any will, deeded (gave) the Fairmount property to Ernest, but he had domestic troubles, a wife was claiming $6,000 alimony, and he was in some kind of a jam about an automobile

wreck. The alimony claim was settled for $500, furnished by the mother. In the course of adjusting things, Mr. Lohman advised that Ernest deed the Fairmount property back to his mother. Ernest demurred; said to his mother: ''If you die my brother (Everett) will get half of the house'', but said that if his mother would make a will and will the house to him he would sign the deed. The deed was made and the will (the 1935 will) was later executed.

Concerning the 1939 will, Mr. Lohman testified: ''Mrs. Norwood came to my office some time in 1939; my mind is hazy. She said she was going to the hospital and said something about changing her will; wanted those grandchildren educated; wanted the building and loan stock willed or given to them. She said, 'Maybe I had better change my will.' We got to talking and I said, 'There is no occasion to make a will', because what she wanted to do was to see that the two boys completed their University education, and there was $4,000 worth of building and loan stock for those boys, and I said, 'If that is what you want, we will have it transferred right now.' And it was afterwards transferred. That was a few days before she went to the hospital for an operation. I don't remember of her ever executing another will. I have no copy of it. I have always made copies of wills to prevent forgery. I may have started to draw it (will), but she never signed and executed another will.'' Everett Norwood, Mildred Hogan, probate clerk, and Thomas L. Parrish, probate judge, testified that Mr. Lohman said that he had written another will for Mrs. Norwood. The 1935 will was found in a lock box at the Exchange National Bank, Jefferson City. The box was in the name of ''Ernest Norwood, with power of agent to Anna K. Norwood.''

Everett Norwood testified: ''I had a conversation with my mother 5 or 6 days before she died; she said she made the will in 1939 before she went to the hospital the last time; said she made it about the time she was operated on. Q. What did she tell you?' A. She said, 'I have always lived with you two boys', and she said, 'Ernest has always had so much more than you have.' . . . She said, 'Do you want me to tell you how the property is to be divided?' She said, 'I will give Ernest's house back to him to be his as long as he lives and after he dies it will go to Alpha and Teddie,' and she said she would give me the other house to be mine as long as I lived and then it was to go to my children. . . . Q. Did she tell you what provision she had made for the coal yard? A: She put Bernice down there to run it. She said, 'I have some money in the Building & Loan—$4,000.00, and I have drawn $2,500.00 out, and I want Bernice put in charge of the coal yard and pay the notes off and then take the place.' She said she had put Bernice down there to run the coal yard.''

''A demurrer to the evidence admits the truth of the evidence to which the demurrer is directed, and also admits all ██ inferences of fact which a jury might fairly draw from that evidence; and such

demurrer can only be sustained when the facts in evidence and the fair inferences to be drawn from such facts are so strongly against the party at whom the demurrer is directed as to leave no, room for reasonable minds to differ.'' Goslin v. Kurn et al., 351 Mo. 395, 173 S. W. (2d) 79, l. c. 84, and cases there cited. The evidence was sufficient, we think, to make a submissible issue on the execution of the 1939 will, and we so rule.

■ Was the verdict in cause No. 9515 res adjudicata as to the issue on the 1939 will? The fact that no formal judgment was entered on the verdict in cause No. 9515 is not of consequence, so far as our present question is concerned. Gordon v. Burris, 141 Mo. 602, 43 S. W. 642. We might say that one ruling in the Gordon case was overruled in Teckenbrock v. McLaughlin et al., 209 Mo. 533, l. c. 542, 108 S. W. 46, but not the ruling invoked here.

■ In the brief plaintiff says: ''The issue on any (1939) will filed in the probate court has been finally adjudicated in a suit of Ernest Norwood, plaintiff, vs. Everett J. Norwood et al., defendants, case No. 9515. It is true that there were other parties defendant in that contest owing to the fact that there were bequests to others, but the same appellant (Ernest) and respondent (Everett) in the case at bar were parties thereto, the purported contest of the lost will were the same, and it was finally adjudicated that Anna K. Norwood had not executed the purported lost will dated August —, 1939.''

As appears, supra, the purported copy of the 1939 will was filed for probate and admitted to probate; the 1935 will was filed for probate and probate was denied. Thereupon Ernest Norwood filed in the circuit court cause No. 9515 and the present cause, 9516. The identical 1939 will that was admitted to probate was set out in the petition in cause No. 9515, and the verdict of the jury was: ''We, the jury, find that the paper writing admitted in evidence, as Exhibit No. Two, and described in plaintiff's petition as and for the last will and testament of Anna K. Norwood is not the last will and testament of Anna K. Norwood. Walter Wheeler, Foreman.'' In the present cause, defendant, in his answer, does not tie himself, so to speak, to the 1939 will that was admitted to probate and later held by the jury not to be the will of Mrs. Norwood, but defendant, as appears, supra, merely pleads that in August, 1939, Mrs. Norwood executed her last will by which she revoked the 1935 will. However, it appears that the defendants in their answer in cause No. 9515 alleged that the 1939 will, set out in plaintiff's petition in that case, was ''the last will and testament of Anna K. Norwood.'' It is not clear, but the inference is that the present defendant and other legatees and devisees under the 1939 will prepared what is termed a substantial copy of that will and caused it to be admitted to probate. There is no specific claim that Mrs. Norwood executed any will subsequent to the 1935 will except the 1939 will admitted to probate and

later rejected by the jury verdict in circuit court. And there is no claim that the 1935 will is invalid on any ground except that it was revoked by the 1939 will. In the situation, we must proceed on the assumption that if Mrs. Norwood executed any will subsequent to 1935, it was the will rejected by the jury verdict in cause No. 9515.

It is true that the present cause is *to establish* the 1935 will as the last will and testament of Mrs. Norwood, and that cause No. 9515 was *to establish* that the 1939 will was not the last will and testament of Mrs. Norwood. Certainly these were separate and distinct causes of actions, and, as appears, the two wills varied greatly in the disposition of the property, and there were six parties defendant in cause No. 9515 who are not parties in the present cause, but the present plaintiff and defendant were parties to that cause.

Generally, in order to have estoppel by a former judgment (res adjudicata), there must be: (1), Identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made. Rossi v. Davis et al., 345 Mo. 362, 133 S. W. (2d) 363, 1. c. 373, and cases there cited, 125 A. L. R. 1111. The rule stated is, however, general and not exclusive. Res adjudicata may be as to a judgment or as to some particular facts litigated between the parties. In re McMenamy's Guardianship, 307 Mo. 98, 1. c. 110, 270 S. W. 662, 1. c. 665; Boillot v. Income Guaranty Co. (Mo. App.), 124 S. W. (2d) 608, 1. c. 611.

"It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res adjudicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief." 30 Am. Jur., Judgment, Sec. 178.

"A fact or question which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between such parties or privies, in the same court or in any other court of concurrent jurisdiction, *upon either the same or a different cause of action.* This doctrine, that *a fact or question which has been* actually and directly in issue in a former suit and

558

has been judicially passed upon and determined by a domestic court of competent jurisdiction cannot be litigated again in a subsequent suit between the same parties or their privies, is simple and universally recognized in almost innumerable cases, the only difficulty or conflict being in its application to particular cases'' (italics ours). 34 C. J., Sec. 1282, p. 868. See also, Keith v. Willers Truck Service et al., 64 S. D., 274, 266 N. W. 256, 104 A. L. R. 1471.

Mrs. Norwood may have executed the 1939 will, but the jury, in cause No. 9515, found that she did not, and we think the verdict in that cause, under the rule of res adjudicata, precludes defendant from invoking the facts as to the alleged 1939 will to establish that the 1935 will was revoked by a subsequent will. It will not be necessary to consider other questions.

The judgment should be reversed and the cause remanded with direction to enter judgment that the will set out in plaintiff's petition is the last will and testament of Anna K. Norwood. It is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.