The STATE of Missouri, at the information of Ralph L. MARTIN, Prosecuting Attorney of Jackson County, Missouri, and at the relation of Glenn H. Binger, et al., Respondents,

v.

CITY OF INDEPENDENCE, Missouri, a Municipal Corporation, Appellant.

No. 58483.

Supreme Court of Missouri, Division No. 1.

Dec. 16, 1974.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 13, 1975.

Rufus Burrus, W. Raleigh Gough, Independence, for plaintiffs-respondents.

Howard C. Wright, Jr., City Atty., Springfield, Robert M. Clayton, II, City Counselor, Hannibal, George C. Baldridge, City Atty., Joplin, Aaron A. Wilson, City Counselor, Carrol C. Kennett, Associate City Counselor, Kansas City, for amici curiae.

James S. Cottingham, City Counselor, Thomas D. Cochran, James L. Gillham, Asst. City Counselors, Independence, for defendant-appellant.

HIGGINS, Commissioner.

Appeal from judgment in proceeding in the nature of *quo warranto* ousting the City of Independence, Missouri, from exercising jurisdiction over territory purportedly annexed to the City by charter amendments approved by the voters at a special election. The questions are whether the legislative body of a constitutional charter city may, by ordinance, initiate a proposed amendment of its charter and submit it to the voters for approval at a special election under Missouri Constitution, Article 6, Section 20, V.A.M.S.; and, if so, and if the purpose of the proposed amendment as in this instance was annexation of territory to the City of Independence, whether the City was required to submit the proposition of annexation at separate elections held simultaneously in the several territories proposed for annexation under Section 71.870, RSMo 1969, V.A.M.S.

The City of Independence is a constitutional charter city under Missouri Constitution, Article 6, Section 19. On September 18, 1972, its council passed four ordinances, each of which called for a special election to be held in the City of Independence on December 5, 1972, for submission to the voters of the City of proposals to amend the city charter for the purpose of annexing four separate areas or territories in the unincorporated area of Jackson County to the City. Notice of the time, places of holding and purpose of the election was ordered to be given by publication in at least one daily newspaper published in the City, once a week for four consecutive weeks, with the first publication of said notice to be made at least twenty-eight days before, and the last to be made within two weeks of the election. The effective dates of annexation were to be December 31, 1973, for the first area, December 31, 1974, for the second area, and December 31, 1975, for the remaining two areas.

The special election was held in the City December 5, 1972. A majority of the voters of the City approved the four charter amendments by which the four annexations of territory were to be accomplished. On November 3, 1970, the voters of Jackson County at a special election adopted a constitutional home rule charter form of government for Jackson County to become effective January 1, 1973.

Pursuant to the result of the special election of December 5, 1972, the City of

Independence proceeded "to take all necessary actions to subject to its jurisdiction each of said territories * * * and will on the effective dates * * * subject all the owners of property and residents in said area to the laws and ordinances of the said City of Independence * * *."

Ralph L. Martin, prosecuting attorney, at the relation of twelve residents and owners of property within the several annexed areas, alleged in the information in the nature of *quo warranto* that the City of Independence exceeded its powers and unlawfully conducted the charter amendment election at a special election contrary to Missouri Constitution, Article 6, Section 20, and because the City did not hold simultaneous elections in the unincorporated areas subject to the annexation in accordance with Sections 71.870 to 71.920, RSMo 1969, V.A.M.S.

The matter was heard June 27, 1973, after which the court found "that each of said ordinances as so adopted and ratified at such election was and is void and of no legal force and effect, because under Sec. 20 of Art. VI of the Constitution, the legislative body of the City had no authority to call for a vote on such questions at a special election, but was confined to calling a vote thereon at the next general election held at least sixty days after the passage of said ordinances, the court further finding that a special election to vote on such questions could only be called and held if requested by a petition signed by at least twenty per cent of the registered qualified voters of the City, praying for such special election [and] that said ordinances and the votes cast thereon at such election held December 5, 1972 were void and of no legal effect, for the further reason that said proposed annexations were not to take effect until long after January 1, 1973, as above stated, and there was no election held in the unincorporated areas sought to be annexed as required by Sec. 71.870 to 71.920 of the Statutes, said unincorporated areas being within Jackson County, Missouri which had in the year 1970 adopted a special charter under Sec. 18 of Art. VI of the Constitution, which special charter was to go into full force and effect on January 1, 1973."

The court entered its judgment of ouster pursuant to the foregoing findings.

Appellant contends: (I) that under Missouri Constitution, Article 6, Section 20, the legislative body of a constitutional charter city may, by ordinance, propose a charter amendment for purposes of annexation of territory and call for its submission to the voters at a special election; and (II) that it was not necessary to hold simultaneous elections in the annexed areas because on December 5, 1972, the date of the City's special election, Jackson County was not a first class chartered county.

Appellant is supported on its Point I by *amici curiae,* the home rule charter cities of Springfield, Hannibal, Joplin, and Kansas City, all of which have construed Missouri Constitution, Article 6, Section 20, to authorize the legislative body of a home rule charter city to initiate an amendment to its charter and to submit it to the electorate at a special election. See also White v. City of Columbia, 461 S.W.2d 806 (Mo. banc 1970), and Seibert v. City of Columbia, 461 S.W.2d 808 (Mo. banc 1970), where the City of Columbia, a constitutional charter city, submitted proposed charter amendments extending the corporate limits of Columbia to the voters at special elections called for that purpose.

Respondents take the same position that they submitted to, and that was adopted by, the trial court.

As suggested by respondents, rules applicable to construction of constitutional provisions are the same as those applied to the construction of statutes, except that the former are given a broader construction, due to their more permanent character, Wring v. City of Jefferson, 413 S.W.2d 292 (Mo. banc 1967); State ex rel. Curators of University of Mo. v. Neill, 397 S.W.2d 666 (Mo. banc 1966); State ex rel.

Jones v. Atterbury, 300 S.W.2d 806 (Mo. banc 1957); and constitutional provisions must be construed as a whole so as not to destroy the general intent and purpose of the framers, State v. Adkins, 284 Mo. 680, 225 S.W. 981 (1920); State ex inf. McKittrick v. Williams, 346 Mo. 1003, 144 S.W.2d 98 (banc 1940); Stemmler v. Einstein, 297 S.W.2d 467 (Mo. banc 1956); Chaffin v. Christian County, 359 S.W.2d 730 (Mo. banc 1962). Of particular importance is the principle that in determining meaning of a constitutional provision due regard will be given to its primary objects and all related provisions should be construed as a whole and where necessary to bring conflicts, if any, into harmony. State ex rel. Jones v. Atterbury, supra, 300 S.W.2d l.c. 810.

Missouri Constitution, Article 6, Section 19, provides: "Any city having more than five thousand inhabitants * * * may frame and adopt a charter for its own government. The legislative body of the city may, by ordinance, submit to the voters the question: 'Shall a commission be chosen to frame a charter?' If the ordinance takes effect more than sixty days before the next election, the question shall be submitted at such election and if not, then at the next general election thereafter, except as herein otherwise provided. The question shall also be submitted on a petition signed by ten percent of the qualified electors of the city, filed with the body or official in charge of the city elections. If the petition prays for a special election and is signed by twenty percent of the qualified electors, a special election shall be held not less than sixty nor more than ninety days after the filing of the petition. * * * The charter so framed shall be submitted to the electors of the city at an election held at the time fixed by the commission, but not less than thirty days subsequent to the completion of the charter nor more than one year from the date of the election of the commission. * * * If the charter be approved by the

voters it shall become the charter of such city at the time fixed therein and shall supersede any existing charter and amendments thereof. * * * The notice of the election shall be published at least once a week on the same day of the week for at least three weeks in some daily or weekly newspaper of general circulation in the city or county, admitted to the post office as second class matter, regularly and consecutively published for at least three years, and having a list of bona fide subscribers who have voluntarily paid or agreed to pay a stated price for a subscription for a definite period of time, the last publication to be within two weeks of the election."

Missouri Constitution, Article 6, Section 20, provides: "Amendments of any city charter adopted under the foregoing provisions may be submitted to the electors by a commission as provided for a complete charter. Amendments may also be proposed by the legislative body of the city or by petition of not less than ten per cent of the registered qualified electors of the city, filed with the body or official having charge of the city elections, setting forth the proposed amendment. The legislative body shall at once provide, by ordinance, that any amendment so proposed shall be submitted to the electors at the next election held in the city not less than sixty days after its passage, or at a special election held as provided for a charter."

■ The method by which a charter city may annex territory is by charter amendment; and Section 20, supra, provides the exclusive mode of annexation for constitutional charter cities. City of Hannibal v. Winchester, 391 S.W.2d 279, 285, 286 [7–8] (Mo. banc 1965).

Under Section 20, supra, the annexation amendment may be proposed by the legislative body of the constitutional charter city, in which case it shall also provide by ordinance for submission of such amendment at the next election held in the city not less

than sixty days after its passage or at a special election held as provided for a charter in Section 19, supra.

Section 19, with respect to submission of a proposed charter as opposed to submission of the question, "Shall a commission be chosen to frame a charter?", provides that the proposed charter shall be submitted at "an election." The Constitution does not define "an election"; however, an acceptable definition is that provided for Jackson County outside the limits of Kansas City where "election" means "any general, special, municipal or primary election * * *." § 113.490(3), RSMo 1969, V.A. M.S. Section 19 further provides that, after having chosen the election at which to submit the proposition in question, notice of the election shall be published in a prescribed manner calculated to give the voters sufficient time in which to apprise themselves of their stand on the proposition. If this be done, the basic requirement of Section 20, i. e., a vote of a majority of the electors which shall follow the adoption of an ordinance proposing the amendment, is satisfied. City of Hannibal v. Winchester, supra, 391 S.W.2d l.c. 282; State ex rel. Jones v. Atterbury, supra. To the extent that McConnell v. Kansas City, 282 S.W.2d 518, 521, 522 (Mo.1955), may differ, suffice to say, as conceded by respondents, "the exact question we have here was not up before the court for decision."

It is true, as found by the trial court, that under Section 19 a petition which prays for a special election on the question, "Shall a commission be chosen to frame a charter?", signed by twenty percent of the voters mandates the call of a special election for submission of that question. There is nothing, however, in that circumstance to prohibit the selection of a special election for submission of a charter amendment proposed by the legislative body under the provision that charter amendments so proposed shall be submitted at "an election."

■ Accordingly, the legislative body of a constitutional city may by ordinance, propose a charter amendment and submit it to the voters at a special election. The City of Independence, a constitutional charter city, by its legislative body, provided by ordinance for submission of an annexation amendment to its charter at a special election and, concededly, gave due notice of such election. The City thus acted within its authority under, and in compliance with, Missouri Constitution, Article 6, Sections 19 and 20.

Section 71.870, supra, provides that cities "within the boundaries of a first class chartered county shall not have the power" to annex unincorporated territory in such a county until an election is held on the annexation proposition and a favorable vote received thereon at separate elections in the territory proposed for annexation simultaneously with the election in the annexing city. This section is applicable to charter cities, St. Louis County v. City of Florissant, 406 S.W.2d 281 (Mo. banc 1966); and the trial court applied the provision against the annexation accomplished by the City of Independence at a special election December 5, 1972.

Jackson County was not operating as a "first class chartered county" on December 5, 1972, to bring the requirement of Section 71.870, supra, into play. Although the county had adopted a constitutional charter for its government at an election held November 3, 1970, it was not to become effective until January 1, 1973; and it is judicially known that Jackson County operated as a classified county with a three-judge county court exercising both legislative and executive duties through December 31, 1972. See also proposed Constitutional Home Rule Charter, Jackson County, Missouri, Introduction, page V.

■ Accordingly, there was no requirement for simultaneous elections in the territories proposed for annexation by the

City of Independence at the special election of December 5, 1972.

Judgment reversed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEILER and HOLMAN, JJ., concur.

BARDGETT, P. J., concurs in result.